IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ME2 PRODUCTIONS, INC., et al. | ) | Civil No. 17-00130 SOM-KJM |
| | ) | |
| Plaintiffs, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO GRANT IN |
| vs. | ) | PART AND DENY IN PART |
| | ) | PLAINTIFFS' MOTION FOR |
| TRAVIS PAGADUAN, | ) | DEFAULT JUDGMENT AGAINST |
| | ) | DEFENDANT TRAVIS PAGADUAN |
| Defendant. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT AGAINST DEFENDANT TRAVIS PAGADUAN

On October 12, 2017, Plaintiffs ME2 Productions, Inc., Venice PI, LLC, and

LHF Productions, Inc. (collectively, "Plaintiffs") filed their Motion for Default

Judgment Against Defendant Travis Pagaduan ("Motion").  *See* ECF No. 33.

Defendant Travis Pagaduan did not file an opposition to the Motion.

The Court held a hearing on the Motion on November 21, 2017.  *See* ECF

No. 40.  Kerry S. Culpepper, Esq., appeared on behalf of Plaintiffs.  Defendant

Travis Pagaduan did not appear at the hearing.  *See id.*  After carefully considering

the Motion, arguments of counsel, and the record in this case, the Court FINDS

and RECOMMENDS that the district court GRANT IN PART AND DENY IN

PART the Motion as set forth below.

BACKGROUND

On March 24, 2017, Plaintiff ME2 Productions, Inc. ("ME2") filed the Complaint against 20 doe defendants, asserting claims for copyright infringement and contributory copyright infringement in violation of 17 U.S.C. § 101, *et seq* ("Copyright Act").  *See* ECF No. 1.  Through early discovery, Plaintiffs obtained the identity of several doe defendants.  *See* ECF No. 9; ECF No. 16 at ¶¶ 25, 33, 41.  For example, Plaintiffs identified doe defendant 18 as Defendant Travis Pagaduan ("Defendant").  ECF No. 16 at ¶ 33.  Thus, on September 1, 2017, Plaintiffs filed the First Amended Complaint, naming Defendant, as well as Defendants George Lucas, Kevin Okazaki, and nine doe defendants.  *See* ECF No. 16.

Plaintiffs allege that (1) ME2 owns the copyright for the film, "Mechanic: Resurrection," (2) Plaintiff Venice PI, LLC ("Venice") owns the copyright for the film, "Once Upon a Time in Venice," and (3) Plaintiff LHF Productions, Inc. ("LHF") owns the copyright for the film, "London Has Fallen."  *See id.* at ¶¶ 8, 12, 16.  The Court collectively refers to the three subject films as, the "Works." Plaintiffs allege that that Defendant used the BitTorrent, a peer-to-peer file-sharing protocol, to reproduce, distribute, display, or perform the Works in violation of the Copyright Act.  *See id.* at ¶¶ 89-92.  Plaintiffs also allege that Defendant previously used the BitTorrent protocol to infringe on LFH's copyrights as to "London Has

Fallen," which was the subject of a separate lawsuit, *LHF Productions, Inc. v. Pagaduan*, CV 16-00437 JMS-RLP ("*LHF I*"). *Id.* at ¶ 35.

Plaintiffs served Defendant on September 7, 2017. *See* ECF No. 22. After Defendant failed to appear or otherwise respond to the First Amended Complaint, the Clerk of Court entered default against Defendant on October 5, 2017. *See* ECF No. 29. Plaintiffs filed the instant Motion on October 12, 2017.

DISCUSSION

I.    Legal Standard

Default judgment may be entered for the plaintiff if the defendant has defaulted by failing to appear or otherwise defend against the plaintiff's complaint, and the plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]" Fed. R. Civ. P. 55(a), (b). Whether to grant or deny a motion for default judgment is within the discretion of the court. *Haw. Carpenteres' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986). Entry of default does not entitle the non-defaulting party to a default judgment as a matter of right. *In re Villegas*, 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991). Default judgments are ordinarily disfavored, and cases should be decided on the merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding a motion for default judgment (collectively, "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel*, 782 F.2d at 1471-72 (citation omitted).

In deciding a motion for default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Although allegations in the complaint regarding liability are taken as true, the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

II.    Jurisdiction

Before considering the merits of the Motion, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully

4

attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

The Court finds that it has subject matter jurisdiction over the claims in Plaintiffs' First Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1338, and the Copyright Act.  The Court also finds that it has personal jurisdiction over Defendant based on Plaintiffs' allegation that Defendant is a resident of the State of Hawai'i and the fact that Defendant was served on September 7, 2017, at his residence in Hawai'i.  *See* ECF No. 16 at ¶¶ 4,[1] 20; ECF No. 22.  Accordingly, the Court turns to the merits of the Motion.

III.    *Eitel* Factors

Given its determination that jurisdiction is proper, the Court next analyzes whether default judgment is appropriate under the *Eitel* factors.

A.    The Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers whether Plaintiffs would suffer prejudice if default judgment is not entered.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Here, absent entry of default judgment, Plaintiffs would be without recourse for recovery.  Accordingly, the first *Eitel* factor favors entry of default judgment.

---

[1]  Plaintiffs appear to have inadvertently listed two paragraphs numbered "4" in the First Amended Complaint.  *See* ECF No. 16 at 2-3.  The Court's citation here refers to the second paragraph "4."

B.    The Merits of Plaintiffs' Substantive Claims

Under the second *Eitel* factor, the Court considers the merits of Plaintiffs' substantive claims.  As noted above, the allegations in the complaint are taken as true for purposes of determining liability.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18; *Fair Hous. of Martin*, 285 F.3d at 906.  Taking Plaintiffs' allegations in the First Amended Complaint as true, the Court finds that Plaintiffs have established that they are entitled to default judgment against Defendant on all claims.

Plaintiffs have made a prima facie showing of copyright infringement and contributory copyright infringement by Defendant.  A plaintiff asserting a copyright infringement claim must prove "(1) ownership of the copyright; and (2) infringement – that the defendant copied protected elements of the plaintiff's work."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). Regarding Plaintiffs' claim for copyright infringement, Plaintiffs allege:  (1) they own and have registered their respective copyrighted films, *i.e.*, the Works; (2) Defendant reproduced and distributed the copyrighted works without Plaintiffs' authorization; and (3) Defendants' actions damaged Plaintiffs.  *See* ECF No. 16 at ¶¶ 88-97.

As to Plaintiffs' claim for contributory copyright infringement, the Ninth Circuit has recognized that "[o]ne who, with knowledge of the infringing activity,

induces, causes or materially contributes to the infringing conduct *of another* may be liable as a 'contributory' [copyright] infringer." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quotation marks and citation omitted) (emphasis and brackets in original). The Ninth Circuit has "interpreted the knowledge requirement for contributory copyright infringement to include both those with *actual knowledge* and those who *have reason to know* of direct infringement. *Id.* (citation omitted). Here, Plaintiffs allege that, by participating in the BitTorrent protocol, Defendant caused or materially contributed to the direct infringement of Plaintiffs' copyright by other defendants. *See id.* at ¶¶ 99-100. Plaintiffs also allege that Defendant knew or should have known that other BitTorrent users were directly infringing on Plaintiffs' Works. *See id.* at ¶ 101. The Court finds that, although Plaintiffs' allegations are minimal, they are nevertheless sufficient to state a claim for contributory copyright infringement. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Accordingly, the merits of Plaintiffs' substantive claims weigh in favor of default judgment.

C.    The Sufficiency of the First Amended Complaint

For the reasons discussed above, the Court finds that the allegations in the First Amended Complaint are sufficiently pled. Accordingly, the sufficiency of the First Amended Complaint weighs in favor of default judgment.

D.    The Sum of Money at Stake

Regarding the fourth *Eitel* factor, Court "must consider the amount of money at stake in relation to the seriousness of the Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (citing *Eitel*, 782 F.2d at 1472).  Under the Copyright Act, a plaintiff may elect to seek actual damages attributable to the infringement or statutory damages of "not less than $750 or more than $30,000." 17 U.S.C. § 504(b), (c).  In the Motion, Plaintiffs seek statutory damages in the total amount of $7,500, as well as $2,913.21 for attorneys' fees and costs.  *See* ECF No. 33 at 2.  Except for the minimal amount of money Plaintiffs lost and Defendant saved by not purchasing or renting the infringed Works, Plaintiffs did not suffer economic loss nor did Defendant profit from the infringement.  The Court finds that Plaintiffs' request is extreme compared to the conduct alleged.  Accordingly, this factor weighs against default judgment.

E.    The Possibility of Dispute Concerning Material Facts

The Court finds that the fifth factor, regarding the possibility of dispute concerning material factors, weighs in favor of default judgment.  As noted above, the Court takes the well-pled allegations of the First Amended Complaint as true, except those relating to the amount of damages.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Despite being given a fair opportunity to defend against Plaintiffs' claims, Defendant has not done so.  Although Plaintiffs personally served Defendant with

the First Amended Complaint, Defendant has failed to make an appearance in this action or otherwise respond to the Plaintiffs' claims. Because no dispute has been raised regarding Plaintiffs' material factual allegations, this factor favors default judgment.

F.       Whether Default was Due to Excusable Neglect

Regarding the sixth factor, the Court finds that Defendant's default was not the result of excusable neglect. Defendant failed to defend this action, and the Clerk of Court entered default against him. *See* ECF No. 29. The record indicates that Defendant's default was not the result of any excusable neglect, but rather due to Defendant's conscious and willful decision not to defend this action. Indeed, this district court previously entered default judgment against Defendant in *LHF I* based in part on its finding that Defendant's failure to defend was willful. *See LHF I*, ECF Nos. 33, 34. Consequently, this factor weighs in favor of default judgment.

G.       Policy Favoring Decisions on the Merits

Defendant's default makes a decision on the merits impractical, if not impossible. Under Federal Rule of Civil Procedure 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere

existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive."). Here, Defendant has failed to defend this action, and has thus rendered adjudication on the merits before this Court impracticable. Although the policy favoring decisions on the merits generally weighs against default judgment, this factor alone does not preclude the Court from entering default judgment against Defendant. Accordingly, this factor does not weigh against default judgment.

      H.     Totality of the *Eitel* Factors

The Court finds that the totality of the *Eitel* factors weigh in favor of entering default judgment in favor of Plaintiffs and against Defendant. Accordingly, the Court next considers Plaintiffs' request for statutory damages, attorneys' fees, and costs.

IV.    Remedies

Although Defendant's default establishes his liability to Plaintiffs, it does not establish the amount of damages or other relief to which Plaintiffs are entitled. *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18. Plaintiffs must provide evidence to support their requested relief and the relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, Plaintiffs request that the Court: (1) grant Plaintiffs injunctive relief in the form of an order (i) requiring Defendant to destroy all illegal copies of the infringed work,

all copies of the BitTorrent protocol, and any software used for the alleged

infringement, and (ii) prohibiting Defendant from infringing on Plaintiffs'

copyright in the work and from knowingly and willfully using BitTorrent or the

Internet for copying for downloading content in violation of U.S. copyright law in

the future; (2) statutory damages of $7,500, $2,500 to each of the Plaintiffs for

each of the infringed Works; and (3) $2,537.50 for attorneys' fees; and (4) $270.00

for costs.  ECF No. 33-1 at 17-19, 22.  The Court addresses each of Plaintiffs'

requests in turn below.

A.     Injunctive Relief

The Copyright Act authorizes a court to "grant temporary and final

injunctions on such terms as it may deem reasonable to prevent or restrain

infringement of a copyright."  17 U.S.C. § 502(a).  In addition, the Copyright Act

authorizes a court to "order the destruction or other reasonable disposition" of all

copies of the copyrighted work "found to have been made or used in violation of

the copyright owner's exclusive rights," as well as "articles by means of which

such copies . . . may be reproduced."  *Id.* § 503(b).

To be entitled to a permanent injunction, however, Plaintiffs must

demonstrate that:  (1) they have suffered an irreparable injury; (2) remedies at law,

*e.g.*, monetary damages, are inadequate to compensate for the injury;

(3) "considering the balance of hardships between the plaintiff and defendant, a

remedy in equity is warranted"; and (4) "the public interest would not be disserved

by a permanent injunction" (collectively, "*eBay* factors").  *eBay Inc. v.*

*MercExchange, LLC*, 547 U.S. 388, 391 (2006); *c.f. Cook Prods., LLC v. Stewart*,

Civ. No. 17-00034 ACK-RLP, 2017 WL 4797513, at *3 (D. Haw. Oct. 24, 2017)

(citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 996 (9th

Cir. 2011)) ("[I]rreparable harm is not presumed even where infringement has been

found."); *see also Hardy Life, LLC v. Nervous Tattoo, Inc*., No. CV 08-3524 PA

(CTx), 2008 WL 11338698, at *3 (C.D. Cal. Aug. 4, 2008) (noting that "*eBay*

rejected a presumption of irreparable harm when assessing the issuance of a

permanent injunction").

This district court and other courts in this circuit have issued permanent

injunctions like the one requested here in similar default judgment cases involving

copyright infringement through the BitTorrent protocol.  *See Cook Prods., LLC v.*

*Stewart*, Civ. No. 17-00034 ACK-RLP, 2017 WL 4797513, at *3 (D. Haw.

Oct. 24, 2017) (citing *Malibu Media, LLC v. Sianturi*, Case No. 1:16-cv-01059-

AWI-SKO, 2017 WL 3328082, at *6 (E.D. Cal. 2017); *LHF Prods., Inc. v. Does 1-*

*19*, Case No. C16-1175RSM, 2017 WL 615197, at *3 (W.D. Wash. Feb. 15,

2017); *Dallas Buyers Club, LLC v. Bui*, CASE NO. C14-1926RAJ, 2016 WL

1242089, at *3 (W.D. Wash. Mar. 30, 2016); *Elf-Man, LLC v. C.G. Chinque*

*Albright*, No. 13-CV-0115-TOR, 2014 WL 5543845, at *7 (E.D. Wash. Oct. 31,

2014)); *see also ME2 Prods., Inc v. Pumaras*, CIVIL NO. 17-00078 SOM/RLP,

2017 WL 4707015, at *7 (D. Haw. Oct. 19, 2017). As in the foregoing cases, this

Court finds that Plaintiffs have sufficiently demonstrated that a permanent

injunction is appropriate in this case.

First, the Court finds that Plaintiffs have sufficiently established irreparable

harm and that adequate remedies at law are not available to Plaintiffs because of

the nature of BitTorrent. Plaintiffs assert that BitTorrent's protocol operates in

such a way that it leads to the rapid distribution of files to many users, *i.e.*,

Defendant can easily continue to infringe and distribute the copyrighted works to

numerous other users. *See* ECF No. 33 at 19-20. Thus, should this distribution

persist, Plaintiffs will likely be without legal recourse as to their copyrights

implicated here.

In addition, Plaintiffs have demonstrated that there is a high likelihood of

continuing violations of their copyrights if an injunction is not entered. According

to Plaintiffs, because of the way the BitTorrent network operates, every

downloader of the content is also an uploader. ECF No. 33-1 at 19. This means

that "every user who has a copy of the infringing material may also be a source for

later downloads of the material, so long as the first user remains part of the

BitTorrent network and is online at the time a subsequent user requests the file."

*Id.* Accordingly, without an injunction, Defendant will likely be the source for others to repeatedly download the Works.

Furthermore, Defendant has on more than one occasion used the BitTorrent network to infringe on copyrighted works. Defendant has also refused to participate in this action. Accordingly, the Court has no reassurance that Defendant will delete his infringing copies, stop using the BitTorrent network to infringe on copyrighted works, or voluntarily do either in the future. *See Stewart*, 2017 WL 4797513, at *3 (citing *Hearst Holdings, Inc. v. Kim*, Case No. CV 07-4642 GAF (JWJx), 2008 WL 11336137, at *7 (C.D. Cal. Aug. 17, 2008) (holding that the defendants' "failure to respond in any way to this action does not reassure the Court that [they] have stopped infringing [the plaintiffs'] copyrights, which is yet another reason why granting a permanent injunction to enjoin them from further infringement is appropriate"); *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006) ("Defendant's failure to respond to the complaint likely suggests Defendant does not take seriously the illegality of the infringing activity.")). Accordingly, the Court finds that Plaintiffs have established that they have suffered irreparable harm and will likely continue to suffer irreparable harm without an injunction, and that remedies at law would be inadequate in this case.

14

Second, as to the balance of hardships, Defendant suffers no injury due to an

injunction "other than refraining from his infringing conduct, while Plaintiff would

have to trace numerous IP addresses as distribution and infringement continues."

*Stewart*, 2017 WL 4797513, at *3.  Considering the hardships between the

Plaintiffs and Defendant, the Court finds that a remedy in equity is warranted.  *See*

*Malibu Media, LLC v. Redacted*, Civil Action No. DKC 15-0750, 2016 WL

3668034 at *5 (D. Md. July 11, 2016) (finding that considering the balance of

hardships between the plaintiff and defendant, a remedy in equity was warranted

because the defendant suffered no injury due to an injunction other than what

would "be a result of [the defendant] ceasing the allegedly infringing conduct");

*c.f. Medias & Co., Inc. v. Ty, Inc.*, 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000)

(holding that the balance of hardships weighed in favor of the plaintiff because

"any injury to [the defendant] caused by the preliminary injunction would be a

result of [the defendant's] ceasing the alleged infringing conduct").

Finally, there is no dispute in this circuit that the prevention of copyright

infringement serves the public interest.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios,*

*Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (citation

omitted) ("The public interest in receiving copyrighted content for free is

outweighed by the need to incentivize the creation of original works."); *see also*

*UMG Recordings, Inc. v. Blake*, No. 5:06-CV-00120-BR, 2007 WL 1853956, at *3

(E.D.N.C. June 26, 2007) ("[T]here is a substantial public interest in preserving a copyright holder's exclusive rights and no public interest will be disserved by enjoining Defendant from continuing this activity.").

Based on the foregoing, the Court finds that Plaintiffs have made a sufficient showing of the four *eBay* factors to entitle them to a permanent injunction in this case. Notwithstanding this Court's finding that a permanent injunction is appropriate, the Court finds that a more tailored injunction than the one Plaintiffs seek is warranted. As detailed above, Plaintiff seeks a permanent injunction: (1) requiring Defendant to destroy all illegal copies of the infringed work, all copies of the BitTorrent protocol, and any software used for the alleged infringement, and (2) prohibiting Defendant from infringing on Plaintiffs' copyright in the work and from knowingly and willfully using BitTorrent or the Internet for copying for downloading content in violation of U.S. copyright law in the future. Plaintiffs' request for an injunction that requires Defendant to destroy all copies of the BitTorrent protocol, and any software used for the alleged infringement, is overly broad. *See Quiksilver, Inc. v. Kymsta Corp.*, 360 Fed. Appx. 886, 889 (9th Cir. 2009) ("Although the district court has 'considerable discretion in fashioning the terms of an injunction,' an injunction must be 'tailored to eliminate only the specific harm alleged.'") (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992)).

"BitTorrent has legal uses, and [Plaintiffs are] not the copyright holder with respect to every other movie." *ME2 Prods., Inc.*, 2017 WL 4707015, at *8 (declining to order a broad injunction requiring the defendant to cease all use of BitTorrent or to delete other movies obtained therefrom); *Stewart*, 2017 WL 4797513, at *4 (citing *ME2 Prods., Inc.*).  Accordingly, the Court recommends that the district court grant a limited injunction that is tailored to the specific facts of this case, which this Court finds is more consistent with the Copyright Act.  *See* 17 U.S.C. § 502(a) (providing that a court may issue a final injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1062 (N.D. Cal. 2010) ("Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law.").

The Court thus recommends that the district court GRANT the preliminary injunction, but tailor the injunction to:  (1) order Defendant to delete or destroy any and all illegal copies of the Works, specifically, "Mechanic:  Resurrection," "Once Upon a Time in Venice," and "London Has Fallen" in his possession or control; and (2) enjoin Defendant from downloading the Works in the future over the BitTorrent network, any other peer-to-peer file-sharing network, or any other manner infringing on Plaintiffs' respective copyrights as to the Works.

B.    Statutory Damages

Under the Copyright Act, a plaintiff may elect to seek actual damages attributable to the infringement or statutory damages of "not less than $750 or more than $30,000." 17 U.S.C. § 504(b), (c). Where the infringement was "willful," however, the court may award up to $150,000 in statutory damages. *Id.* § 504(c)(2). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984) (citation omitted).

Statutory damages "serve both compensatory and punitive purposes" so as "to sanction and vindicate the statutory policy of discouraging infringement." *Los Angeles News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quotation marks and citation omitted). This Court is thus guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Id.* (quotation marks and citation omitted).

District courts within the Ninth Circuit, including this district court, tend to limit awards of statutory damages to the statutory minimum of $750 in similar cases involving BitTorrent movie downloading and sharing. *See, e.g.*, *ME2 Prods., Inc.*, 2017 WL 4707015, at *3-4 (concluding that the minimum statutory amount of $750 would sufficiently deter future downloading and adequately

18

compensate the plaintiff); *Cook Prods., LLC v. Szerlip*, CIVIL No. 16-00637 HG-KSC, 2017 WL 4883220, at *3 (D. Haw. Oct. 30, 2017) (same); *Criminal Prods., Inc. v. Gunderman*, Case No. C16-729-RAJ, et al., 2017 WL 3297518, at *4 (W.D. Wash. Aug. 1, 2017) (awarding the $750 minimum in statutory damages in a similar BitTorrent file sharing case); *Bui*, 2016 WL 1242089, at *4 (same); *Dallas Buyers Club, LLC v. Nydam*, CASE NO. C14-1684RAJ, et al., 2016 WL 7719847, at *4 (W.D. Wash. Aug. 8, 2016) (same); *Voltage Pictures, LLC v. Martinez*, No. 3:15-cv-00002-AC (D. Or. Aug. 11, 2015) (same); *Elf-Man, LLC*, 2014 WL 5543845, at *7 (same); *Thompsons Film, LLC v. Athias*, No. 13-CV-0126-TOR, 2014 WL 5543900, at *5 (E.D. Wash. Oct. 31, 2014) (same).

Plaintiffs request an award of $2,500 for each of the infringed Works, for a total award of $7,500 in statutory damages. ECF No. 33-1 at 14. Plaintiffs argue that an award of the statutory minimum is insufficient to deter Defendant from continuing to infringe on copyrighted works, as demonstrated by his continued use of the BitTorrent protocol. *See id.* at 16. Plaintiffs further argue that a higher damages award is justified when a defendant is shown to have continued its

infringing conduct after "notice of the litigation."[2]  *Id.* at 16-17.  Plaintiffs cite two

BitTorrent copyright infringement cases in support of their arguments:  (1) *Clear*

*Skies Nevada, LLC v. Fritter*, Case No. 3:16-cv-1364-AC, 2017 WL 980555 (D.

Or. Mar. 14, 2017); and (2) *Criminal Productions, Inc. v. Turchin*, Case No. 3:16-

cv-1695-AC, 2017 WL 979099 (D. Or. Mar. 14, 2017).  Both cases are

distinguishable.

        In *Clear Skies*, the court entered default judgment and an award of statutory

damages for $1,500 against the defendant.  2017 WL 980555, at *3.  The court's

award of damages higher than the statutory minimum was based in part on its

finding that the defendant had continued to use the BitTorrent protocol after

receiving notice of the lawsuit.  *See id.*  The court stated:  "Importantly, after being

notified that use of the torrent protocol to download copyright-protected material is

illegal and after being served with this lawsuit, the IP address associated with [the

defendant] continues to download *significant material* using the protocol."  *Id.*

(emphasis added).

---

[2]  The Motion is unclear as to whether "the litigation" refers to the *LHF I* matter or
the present action.  At the hearing on the Motion, Plaintiffs' counsel argued that
the Court should award $2,500 in statutory damages for each of the infringed
Works based on Defendant's continued use of the BitTorrent network to infringe
on copyrighted works, including LHF's "London Has Fallen," despite knowledge
of the *LHF I* matter and the default judgment entered against him in that case.
Thus, based the arguments of counsel, Plaintiffs appear to argue that a higher
damages award is justified because Defendant continued his infringing conduct
even after he received notice of the *LHF I* matter.

In *Turchin*, the court entered default judgment and an award of statutory

damages in the amount of $2,500 for each infringed work against the defendant.

2017 WL 979099, at *3-4.  The court noted that the defendant had been a

defendant in a prior, separate copyright infringement action involving the

BitTorrent protocol.  *Id.* at *2.  In the prior case, the defendant had entered into a

stipulated judgment, had "stipulated to the allegations of liability, including that he

willfully downloaded the [subject] motion picture . . . through the BitTorrent

network with the intent to cause harm[,]" and had agreed to pay $750 in statutory

damages.  *Id.*  In awarding $2,500 in statutory damages, the *Turchin* court focused

on the defendant's "significant continued" infringement using the BitTorrent

network, despite having gone through the legal process in the prior case:

> In considering an appropriate amount of damages, the Court weighs
> heavily the fact that [the defendant] has already been through the legal
> process relating to downloading of motions pictures, consented to
> judgment, paid the minimum statutory damages, and yet a review of
> the internet protocol address associated with him shows *significant
> continued BitTorrent activity well after the conclusion of that lawsuit*.
> Clearly, for [the defendant], the minimum statutory damages did not
> have a deterrent effect in preventing his copyright infringement.

*Id.* at *3 (emphasis added).

Unlike in *Clear Skies* and *Turchin*, there is nothing in the record here to

suggest that Defendant continued to download "significant" material through the

BitTorrent network after being served in *LHF I*.  Plaintiffs' First Amended

Complaint alleges that Defendant infringed upon their Works on June 11, 2016,[3] June 13, 2016, November 16, 2016, and August 9, 2017.  *See* ECF No. 16 at ¶¶ 34, 36; ECF No. 16-1.  Defendant, however, was not served in *LHF I* until April 15, 2017, after all but the August 9, 2017 infringement had already occurred.  *See LHF I*, ECF No. 27.  Plaintiffs provide no evidence that, other than on August 9, 2017, Defendant used the BitTorrent network to infringe on copyrighted works after service in the *LHF I* matter.  While the Court appreciates that even a single instance of infringement on the BitTorrent system can potentially have negative impacts to the copyright holder, a single infringement does not constitute "significant material" or "significant continued BitTorrent activity" so as to warrant $2,500 per infringement.  *See Clear Skies*, 2017 WL 980555, at *3; *Turchin*, 2017 WL 979099, at *3.

Moreover, the magistrate judge in *LHF I* issued the Findings and Recommendation to Grant in Part and Deny in Part Plaintiff LHF Productions, Inc.'s Motion for Entry of Default Judgment Against Defendant on August 21, 2017 ("8/21/17 F&R").  *LHF I*, ECF No. 33.  In the 8/21/17 F&R, the magistrate judge recommended an award of the minimum $750 for statutory damages, concluding that the amount was "more than sufficient" to deter and punish Defendant's behavior and to compensate the plaintiff.  *See id.* at 12.  The district

---

[3] Defendant's infringement of LHF's copyrighted work on June 11, 2016 was the subject of the *LHF I* matter.  *See* ECF No. 16 at ¶ 35.

court issued its Order Adopting the 8/21/17 F&R on September 11, 2017, and the

clerk entered judgment on September 12, 2017. *Id.*, ECF Nos. 34, 35. The 8/21/17

F&R was issued after August 9, 2017, the date Plaintiffs allege that Defendant last

committed infringement. Plaintiffs present no evidence that Defendant further

infringed on copyrighted works after issuance of the 8/21/17 F&R. This Court

thus has no basis to conclude that the $750 minimum statutory damages awarded in

*LHF I* was insufficient to deter Defendant from continuing his infringing activity

on the BitTorrent network. Accordingly, the Court is not persuaded by Plaintiffs'

arguments that statutory damages of $2,500 per infringement are warranted.

Based upon the foregoing, the Court finds that the statutory minimum of

$750 per infringement, for a total of $2,250, is an appropriate award in this case.

C.    Attorneys' Fees

The Copyright Act provides that a court "may" award a reasonable

attorneys' fee to the prevailing party. 17 U.S.C. § 505. Section 505 "confers

broad discretion on district courts" but "in deciding whether to fee-shift, they must

take into account a range of considerations beyond the reasonableness of the

litigating positions." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988

(2016). These non-exclusive considerations include "the degree of success

obtained; frivolousness; motivation; objective unreasonableness (both in the

factual and legal arguments in the case); and the need in particular circumstances

to advance considerations of compensation and deterrence." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (citation omitted); s*ee also Kirtsaeng*, 136 S. Ct. at 1985.  The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

The Court finds that an award of attorneys' fees is appropriate in this case. Plaintiffs' claims against Defendant are not frivolous, and Plaintiffs have succeeded in obtaining default judgment against Defendant for injunctive relief and statutory damages.

"When calculating the amount of attorneys' fees to be awarded in litigation, the district court applies the lodestar method, multiplying the number of hours expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court may adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that are not already subsumed into the lodestar.  *See Leff v. Bertozzi Felice Di Giovanni Rovai & C. Srl*, CIVIL No. 15-00176 HG-RLP, 2015 WL 9918660, at *8-9 (D. Haw. Dec. 30, 2015), *adopted in* 2016 WL 335850 (D. Haw. Jan. 26, 2016) (citing *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).  The

district court may also reduce the amount of requested fees to reflect a party's

limited degree of success, to account for block billing, or to deduct hours deemed

excessive as long as it provides an adequate explanation of its fee calculation.

*Ryan*, 786 F.3d at 763.

1.    Reasonable Hourly Rate

"The prevailing market rate in the community is indicative of a reasonable

hourly rate." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262-63 (9th Cir. 1987).

The requesting party "has the burden to produce satisfactory evidence, in addition

to the affidavits of its counsel, that the requested rates are in line with those

prevailing in the community for similar services of lawyers of reasonably

comparable skill and reputation." *Id.* Here, Plaintiffs request an hourly rate of

$250 for their counsel, Mr. Culpepper. *See* ECF No. 33-1 at 22.

Mr. Culpepper has been licensed to practice law in Virginia since 2000, and

in Hawai'i since 2012. ECF No. 33-7 at ¶ 5. Mr. Culpepper asserts that he

"specializes in intellectual property, particularly electrical and computer software

technology." *Id.* The Court finds that Plaintiffs' requested hourly rate of $250 for

Mr. Culpepper is manifestly reasonable and consistent with the hourly rates

recently awarded to Mr. Culpepper in similar cases. *See Szerlip*, 2017 WL

4883220, at *5 (awarding Mr. Culpepper an hourly rate of $250 for a similar

BitTorrent copyright infringement case); *Stewart*, 2017 WL 4797513, at *6; *ME2*

*Prods., Inc.* 2017 WL 4707015, at *7 (capping Mr. Culpepper's hourly rate at

$250).  Accordingly, the Court recommends that the district court award Mr.

Culpepper an hourly rate of $250, including taxes.  *See Szerlip*, 2017 WL 4883220,

at *5 (awarding $250 hourly rate including taxes); *ME2 Prods., Inc.* 2017 WL

4707015, at *7 (same, holding that "[t]he nature of the work causes this court to

treat $250 as including applicable taxes").

        2.      Reasonable Hours Expended

Plaintiffs seek to recover a total of 10.2 hours expended by Mr. Culpepper in

this case.  *See* ECF No. 33-1 at 22.  The fee applicant bears the burden of

documenting the hours expended and must submit evidence in support of the hours

worked.  *Hensley*, 461 U.S. at 437; *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th

Cir. 1992).  The prevailing party bears the burden of proving that the fees

requested are associated with the relief requested and are reasonably necessary to

achieve the results obtained.  *See Tirona v. State Farm. Mut. Auto. Ins. Co.*, 821 F.

Supp. 632, 636 (D. Haw. 1993) (citations omitted).

Courts, however, have their own "independent duty to review the submitted

itemized log of hours to determine the reasonableness of the hours requested in

each case."  *Irwin v. Astrue*, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or.

Mar. 5, 2012) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)).  The

courts must guard against awarding fees and costs which are excessive, and must

determine which fees were self-imposed and avoidable. *See Tirona*, 821 F. Supp.

at 637 (citation omitted). To this end, courts are empowered to use their discretion

to "'trim fat' from, or otherwise reduce, the number of hours claimed to have been

spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)

(citation omitted). Accordingly, courts must deny compensation for time expended

on work deemed excessive, redundant, or otherwise unnecessary. *See Gates*, 987

F.2d at1397 (citing *Hensley*, 461 U.S. at 433-34). Based on a review

Mr. Culpepper's time entries, the Court recommends that the district court reduce

Plaintiffs' requested hours as set forth below.

a. Clerical Tasks

The Court finds that Mr. Culpepper's time entries include time expended on

clerical tasks, which are not recoverable because they "are part of an attorney's

overhead and are reflected in the charged hourly rate." *Au v. Funding Grp.*, 933 F.

Supp. 2d 1264, 1275-76 (D. Haw. 2013). Plaintiffs request 1.7 hours for

Mr. Culpepper's time spent to prepare and file documents with the Court, and

serve Defendant with the summons. *See* ECF No. 33-7 at 2. Tasks such as filing

documents with the Court and preparing documents for filing, however, have

previously been deemed non-compensable clerical tasks. *Id.* at 1276; *see also*

*Crawford v. Japan Airlines*, Civil No. 03-00451 LEK-KSC, 2014 WL 1326576, at

\*4 (D. Haw. Jan. 22, 2014), *adopted by* 2014 WL 1326580 (D. Haw. Mar. 28,

2014) (citations omitted) (listing clerical and ministerial tasks deemed non-compensable in this district).  Preparing and serving the summons is also a non-compensable clerical task.  *Neil v. Comm'r of Social Sec.*, 495 Fed. Appx. 845, 847 (9th Cir. 2012) (finding that the district court did not abuse its discretion in declining to award fees for filing documents and preparing and serving the summons).  Accordingly, Plaintiffs are not entitled to recover for time Mr. Culpepper on these tasks.  The Court thus recommends that the district court reduce Plaintiffs' total requested by hours by 1.7 hours for these non-compensable clerical tasks.[4]

### b.    Excessive Time

"Time spent on work that is 'excessive, redundant, or otherwise unnecessary' shall not be compensated."  *Szerlip*, 2017 WL 4883220, at *6 (other citation omitted) (citing *Gates*, 987 F.2d at 1397).  Plaintiffs seek to recover 6.7 hours for time Mr. Culpepper spent drafting the instant Motion.  *See* ECF No. 33-7 at 2.  The Court notes that the Motion is similar to the motions for default judgment that Mr. Culpepper filed in:  (1) *ME2 Prods., Inc. v. Pumaras*, CV 17-00078 SOM-RLP, ECF No. 32 (July 12, 2017); (2) *Cook Prods., Inc. v.  Stewart*, CV 17-00034 ACK-RLP, ECF No. 26 (July 7, 2017); and (3) *Cook Prods., Inc. v.*

---

[4]  The Court recommends reducing Mr. Culpepper's requested hours for clerical tasks as follows:  5/17/2017, three entries on 9/1/2017, 9/11/2017, 10/4/2017.  *See* ECF No. 33-7 at 2.

*Szerlip*, CV 16-00637 HG-KSC, ECF No. 48 (June 8, 2017). The Court has

reviewed and compared the motions in the above-listed matters with the instant

Motion, and it appears that the only substantive difference is Plaintiffs' argument

for increased statutory damages based on Defendant's alleged continuing

violations despite notice of the *LHF I* matter. Otherwise, Mr. Culpepper made

only minor revisions to the Motion relevant to Defendant, such as the Works

involved and dates of service. The Court thus finds that the requested 6.7 hours are

excessive.

        The Court finds that 2.5 hours is a reasonable amount of time for

Mr. Culpepper to have spent preparing the Motion. *See Szerlip*, 2017 WL

4883220, at *6 (reducing the plaintiff's request for Mr. Culpepper's time spent on

a similar default judgment motion from 6.59 hours to 2 hours); *cf. ME2 Prods.,

Inc.* 2017 WL 4707015, at *6-7 (awarding the plaintiff a total of 1 hour of

Mr. Culpepper's time "reasonably spent working on this 'cookie-cutter case'").

Accordingly, the Court recommends that the district court reduce Plaintiffs' total

requested hours by 4.2 hours for excessive time spent on the Motion.

        The Court also recommends reducing Mr. Culpepper's remaining 1.8 hours,

which relate to tasks performed before the filing of the First Amended Complaint.

*See* ECF No. 33-7 at 2. The Court finds these hours to be excessive, as

Mr. Culpepper has experience performing the same tasks in other "cookie-cutter"

BitTorrent cases.  For example, Mr. Culpepper spent 0.25 hours to prepare a subpoena pursuant to Federal Rule of Civil Procedure 45, and send it to the process server.  *See id.*  Mr. Culpepper is familiar with Rule 45 subpoenas, as he has obtained them in other BitTorrent cases, and likely spent less than a full 0.25 hours completing this task.  *See, e.g.*, *ME2 Prods., Inc.*, ECF No. 8.

The Court finds that 1 hour is a reasonable amount of time for Mr. Culpepper to have collectively spent on these pre-First Amended Complaint tasks.  Accordingly, the Court recommends that the district court reduce Mr. Culpepper's hours by 0.8 hours.

In sum, the Court recommends that the district court reduce Plaintiffs' total requested hours by 5.0 hours for excessiveness.

c.    Total lodestar calculation

In sum, the Court finds that Plaintiffs have established the reasonableness of an award of attorneys' fees as follows:

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Kerry Culpepper, Esq. | 3.5[5] | $250 | $875 |

---

[5] The 3.5 hours reflects the recommended deductions of 6.7 hours from Plaintiffs' total requested 10.2 hours as follows:  (1) 1.7 hours for clerical tasks; and (2) 5.0 hours for excessiveness.

The Court declines to make adjustments to this lodestar amount. Accordingly, the Court recommends that the district court award Plaintiffs $875 for attorneys' fees, including taxes.

D.    Costs

Pursuant to Section 505, a prevailing party may recover its "full costs." Plaintiffs seek an award of $270 for costs. *See* ECF No. 33-1 at 22. Of this amount, $200 is for filing fees and $70 is for service fees Plaintiffs incurred in this action as to Defendant. *See* ECF Nos. 33-8. The Court finds these amounts to be reasonable. Accordingly, the Court recommends that the district court grant Plaintiffs' request for $270 for costs.

<u>CONCLUSION</u>

The Court FINDS and RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiffs' Motion for Default Judgment Against Defendant Travis Pagaduan as follows:

(1)    Enter default judgment in favor of Plaintiffs and against Defendant;

(2)    Order Defendant to delete or destroy any and all illegal copies of the Works, specifically, "Mechanic: Resurrection," "Once Upon a Time in Venice," and "London Has Fallen" that Defendant has in his possession or control;

(3)    Permanently enjoin Defendant from downloading the Works in the future over the BitTorrent network, any other peer-to-peer file-sharing network, or any other manner infringing on Plaintiffs' respective copyrights as to the Works;

(4)    Award Plaintiffs $750 each for statutory damages, for a total of $2,250;

(5)    Award Plaintiffs a total of $875 for attorneys' fees;

(6)    Award Plaintiff a total of $270 for costs.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaiʻi, December 28, 2017.



 /S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

*ME2 Prods., Inc., et al. v. Pagaduan*, CV 17-00130 SOM-KJM; Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Default Judgment Against Defendant Travis Pagaduan